ROBERT L. BLAND, Judge.
On November 20, 1934, the state road commission received sealed proposals for building and completing, according to plans and specifications prepared therefor, a certain road in Tyler county, West Virginia, known as project no. 3389— p.w.s. — 828, being approximately 27,984 feet in length. Claimant Charley Sargent was the successful bidder. He entered into a contract with the state under date of November 28, 1934, for the completion of the project in accordance with *229 the plans and specifications provided therefor. The work was to begin on or before December 1, 1934, and be completed on or before June 1, 1935. It was agreed that time should be of the essence of the contract. The work to be done under the terms of the contract contemplated approximately 200 cubic yards of excavation according to plans, including refilling, at $1,00 per cubic yard, 5000 cubic yards of gravel bottom course, complete in place, at $4.10 per cubic yard, 5000 cubic yards of gravel top course, complete in place, at $4.T0 per cubic yard, 800 lineal feet 8 inch perforated corrugated metal pipe underdrain, complete in place, at .75 per lineal foot, 150 cubic yards loose stone for underdrains, delivered in place at $2.00 per cubic yard and 28,228 lineal feet of prepared subgrade and shoulders at .05 per lineal foot. Thus it will be seen that said contract provided different items for different types of work.
The contractor agreed that he was fully informed as to all conditions affecting the work to be done, as well as to the labor and materials to be furnished for the completion of the contract, and that such information was received by personal investigation and research and not wholly from the estimates of the engineers, and that he would not make claim against the state by reason of estimates, tests or representations theretofore made by any officer or agent of the state.
It was provided that the work to be done under the contract should be performed in accordance with the true intent and meaning of the plans and specifications, made parts of the contract.
The project was accepted by the road commission and the contractor released from further responsibility under the terms of the contract on November 25, 1935.
The full length of the road when completed was 27,295 lineal feet with a width of 18 feet.
*230 The final es límale shows 1hat (he road commission paid claimant $40,634.04 for work done and performed by him under said contract.
On January 11, 1943, seven years, one month and sixteen days after the completion of the project, said Sargent filed a claim in this court against the state for additional compensation to which he insists he is entitled to be paid, and for which he now seeks an award, on account of said road project in the principal sum of $9,710.00, made up of the following items, to-wit:
1. Payment for 553.18 cubic yards of gravel at $4.10 per cubic yard $2,368.03
2. Reimbursement for 6,605.35 tons of gravel at .50 per ton .3,302.67
3. Reimbursement for the cost of erecting scales 300.00
4. Reimbursement for extra maintenance 3,840.00
Claimant also maintains that he is entitled to be paid interest at the rate of 6% annually on the above aggregate amounts from January 1, 1936.
We shall consider the amount claimed under the first item, namely, $2,368.03. It may be stated, however, at this juncture that there is an error of $100.00 in the amount of this claim. It is apparent that 553.18 cubic yards at $4.10 per cubic yard would amount to $2,268.03 instead of the sum of $2,368.03 as asserted by claimant.
The specifications provided that the yardage should be paid for on the number of cubic yards of surface material, compacted by manipulation and traffic, in place on the road. It appears from the evidence that when claimant concluded that he had placed a sufficient quantity of gravel on the top and bottom courses to make six inches in thickness, when compacted, that the inspector on the project disagreed with him *231 and insisted that he should place still more and additional gravel thereon which he accordingly did. Subsequently a core drill test disclosed that claimant had not only placed the required six inches of thickness on the road when compacted as required by the specifications but had in addition thereto placed three-eighths inch on its entire width of eighteen feet and length of 27,295 lineal feet. These tests showed that claimant had actually placed 553.18 cubic yards on the road over and above the thickness of six inches required by the specifications, and 553.18 cubic yards at $4.10 per cubic yard would amount to $2,268.03.
L. B. White, assistant to the state construction engineer, one of whose duties is to pass on final payments to contractors, and who is shown by the evidence to have reviewed every final payment made by the state road commission since 1930, introduced as a witness on behalf of the state, testified that claimant was paid for 9,098.33 cubic yards, the actual planned thickness of the road at six inches, and also 266.54 cubic yards additional which he said was on account of the extra thickness, making a total of 9,364.84 cubic yards. At $4.10 per cubic yard 9,364.84 cubic yards would amount to $38,395.85. Claimant admits having been paid for 9,364.84 cubic yards, but he says that 266.84 cubic yards thereof was for sand and extra gravel. He states that 123.22 yards represented sand delivered to the job by him under authorization of H. McGraw, district engineer, in a letter addressed to him under date of September 12, 1935, and that 133.29 yards was for extra gravel used in widening places where the road was over eighteen feet, in approaches coming into the road and at a point where the subgrade was soft.
The final estimate shows that claimant was paid for the bottom course the sum of $18,651.60 and for the top course the sum of $19,744.25. These two payments would include the actual planned thickness of six inches for the two courses, and in addition thereto 266.84 cubic yards, the amount for which claimant says he was paid for the additional sand delivered *232 and extra gravel used in widening the road, and approaches coming therein and in filling a soft place in the road. Claimant says, however, that although he has been paid for the 266.84 cubic yards aforesaid, he has received no payment whatever for the additional thickness over and above the planned depth of six inches.
Mr. White explains the manner of payment as follows: “Well, from the theoretical thickness, actual thickness called for in the plans, we computed the yardage. Then we took the actual tonnage that Mr. Sargent said he placed on the road after the controversy arose as to whether it was actually six inches thick or not. That was taken from the récords furnished by the contractor. From those records I arrived at the actual weight, and reduced it back to cubic yards, which made 266 cubic yards.” Assuming, therefore, that it was the purpose of the road commission in paying the final estimate to include therein compensation to claimant at the contract price for the additional gravel placed by him on the road over and above the planned thickness of six inches, it would appear from the testimony of Mr. White that claimant was not really paid for the actual additional number of cubic yards of gravel placed by him on the road. As a matter of fact he would only have been paid for additional gravel at the rate of 266 cubic yards on a tonnage or weight basis. Mr. White divided the actual tonnage furnished him by claimant as having been placed on the road by 2,949.44. The actual quantity of gravel placed on the road by claimant over and above the planned depth of six inches amounted to 553.18 cubic yards. This difference in the two calculations is obvious. The plans did not provide for payment by weight. Settlement was made with claimant for the top and bottom courses, independently of the additional gravel placed on the road above the thickness of six inches, on the basis called for by the specifications. The specifications provided: “If called for on the plans, payment for both top and bottom courses shall be based on either railroad weight or boat weight.” The specifications for the project did not provide for such payment. The road commission paid *233 claimant on road bed measurement. According to Mr. White’s testimony, in making settlement, both road bed and weight measurements were used. From the testimony of Mr. White it would appear at most that claimant was only paid for 266 cubic yards of thickness when he was entitled to be paid for 553.18 cubic yards. It will be observed that there is a distinct conflict between the statement of Mr. White and the statement of claimant. It would appear that claimant would be entitled to be paid upon the basis of the additional cubic yards of thickness placed by him on the road above six inches found by the core drill tests. Mr. White further testified: “Well, his yardage was computed on the actual planned depths in place which would produce on both top and bottom courses a total of 9,098.33 cubic yards. Now in addition to that we have paid Mr. Sargent for 266.44 cubic yards over and above the planned depths.” Such payment, if made, would not constitute settlement for 553.18 cubic yards according to road bed measurement.
The testimony of claimant was very positive to the effect that he had actually been paid for 266.84 cubic yards of gravel, for the placing of which he had been duly authorized, but that such payment constituted no part of the compensation to which he was entitled for additional thickness of gravel above six inches. As above stated, he maintained that 123.22 yards was payment for one purpose and 133.29 was in payment for other purposes. He said such payments were made under the authorization of a letter written to him by H. Mc-Graw, district engineer. The letter in question reads in part as follows:
“This will be your instruction and authorization for placing additional line material in the amount of 200 tons on those sections of your project, as directed by our inspector, who will appear on the job Monday, September 16.” Claimant testified that, he actually placed on the project. 199.05 instead of 200 tons. This authorization would not account for the entire 200 cubic yards placed by claimant on the project, but it *234 does show a modification of the specifications authorized by the district engineer. It does appear, however, very clearly from the final estimate that claimant was paid for 266 cubic yards of additional material, and that such additional payment corresponds substantially with the number of cubic yards for which he claims he was entitled to be paid under due authorization. He says that the entire quantity was authorized. This would seem to be so, for otherwise the road commission would not have paid that amount to him. He says also that the transaction was fully discussed at a hearing before Mortimer Smith, chief engineer, attended by himself, Mr. White, Mr. Blackwood, construction engineer, H. McGraw, district engineer, and Mr. Dick. Since the payment was made to him his statements would seem to find corroboration in the circumstances disclosed by the evidence. Without modification the specifications would clearly control the basis of payment, but it will hardly be questioned that a district engineer in charge of construction would not have the right to make necessary modifications when the exigency of the situation called therefor. We are of opinion, under all the facts disclosed by the testimony, that claimant has not been paid for the 553.18 cubic yards of additional material placed upon the road above the planned thickness of six inches, and that he is entitled to be paid therefor.
„ When the evidence shows that a claimant who had been awarded a contract by the state for the construction of a road project was required to place gravel on the road of greater thickness than provided for by the specifications, an award will be made to cover the amount due for such extra thickness.
Items two and four may be properly considered together. By item two claimant seeks reimbursement for 6,605.35 tons of gravel at .50 per ton in the sum of $3,302.67. By item four he seeks reimbursement for extra maintenance in the sum of $3,840.00. We are not impressed by the thought that either of these items is entitled to serious consideration for allowance. Claimant seems to have had a controversy with the *235 road commission in respect to the type of gravel to be placed upon the road project and for which he should be paid under the terms of the contract. When the sample of gravel material intended to be used by him was sent to the testing department at Morgantown for approval it was rejected and he was required to use material provided for by numbers 5 and 8 prescribed by the standard specifications of the road commission and shown on the plans. He says that he was therefore obliged to pay fifty cents more per ton for the material he was required to use than the specifications called for. He maintains that there is an error in the plans. He further says that before the contract was let for the project the road commission contemplated the construction of a black top road, but before it was actually awarded this plan was changed and the contract was actually let for the construction of a traffic bound gravel road, omitting the black top thereon. We do not perceive any reason for misapprehension of the plain meaning of the plans. The claim for extra maintenance cannot be seriously considered. The specifications and plans call for acceptance of the contract when the gravel placed on the road was properly compacted.
When a controversy arises between a contractor for the construction of a state road project and the state road commission as to whether material used in the gravel surfacing of a road shall be paid for by weight or on the number of cubic yards of surfacing material, compacted by manipulation and traffic, in place on the road, the method set forth in the specifications will prevail.
The item of $300.00 for erecting scales is seemingly possessed of merit. The day before the contract was let claimant noticed that the plans did not state how the gravel material was to be measured. He understood that under the standard specifications gravel surfacing would be measured in the roadbed if not otherwise mentioned on the plans or arrangements made to use weight measure. He thereupon consulted W. O. Wiles, who at the time was assistant engineer in charge of *236 construction, and asked him how it was proposed to measure the gravel to be used on the project. Claimant testified that he was informed by Mr. Wiles that the material could not be accurately measured on the road, and that he believed that the same figure would be used that had been used on two projects on route 18 in Doddridge county. That figure was 2870, that is 2870 pounds would determine one cubic yard. Claimant says that with that information he submitted his bid to do the work and was awarded the contract therefor. Harry McGraw, district engineer, addressed a letter to claimant asking to be advised whether in preparing his contract he had used a unit of weight by which to estimate the weight per cubic yard of gravel material to be used on the project. Claimant advised McGraw that he would use the above figure of 2870 and thereupon leased scales to be used in weighing the gravel material that was to be placed on the road. Claimant testified that the road commission kept a man at the scales all the time for the purpose of verifying weights, and there is no contradiction of such testimony found in the record. Although claimant was awarded the contract for the completion of the project according to the plans and specifications made therefor, we are constrained to conclude that in view of the correspondence that was had between himself and Mr. McGraw he was entitled to assume that it would be necessary to weigh the gravel material that was placed on the road and is entitled to be reimbursed for his outlay on account of the scales, notwithstanding the fact that final settlement was on a roadbed basis.
An award will be made in favor of a contractor for the construction of a state road project for the outlay made by him in leasing scales to weigh gravel material to be placed thereon, when he had reason to rely on the fact that a unit of weight would be adopted by which to estimate the weight per cubic yard of such gravel material.
No interest can be allowed on the award hereinafter made. The court act expressly provides that interest shall not be *237 allowed unless the claim is based upon a contract which specifically provides for the payment of interest.
Objection was made to claimant’s testimony as to what he was told by Mr. Wiles, since the latter was dead at the time of the hearing. In its examination and investigation of claims filed against the state, the court of claims is not bound by the usual common law or statutory rules of evidence. The court is an investigating body and may accept and weigh in accordance with its evidential value any information that will assist the court in determining the factual basis of the claim.
This has been a troublesome case in which to make a determination. It has been very carefully considered. The manner in which it was presented by claimant on his own behalf without the assistance of counsel added to the labor of the court. We believe, however, that the award hereinafter made is fair, reasonable and just to both the claimant and the state.
For the reasons hereinbefore set out an award is made in favor of claimant Charley Sargent for two thousand five hundred sixty-eight dollars and three cents ($2,568.03), embracing an allowance of $2,268.03 for extra gravel placed upon the road over and above its planned depth of six inches, and the sum of $300.00 to cover the outlay of claimant in leasing scales for use on the project.